UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

ABDULJABBAR KHAN

                                    **Plaintiff,**

    vs.                                                    **1:25-CV-950
                                                                    (MAD/ML)**

NEW YORK STATE DEPARTMENT OF
HEALTH, *et al.*,

                                    **Defendants.**

---

APPEARANCES:                                    OF COUNSEL:

ABDULJABBAR KHAN
Albany, New York 12186
Plaintiff, *pro se*

OFFICE OF THE NEW YORK                KAITLIN N. VIGARS, AAG
STATE ATTORNEY GENERAL
The Capitol
Albany, New York 12224
Attorney for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I.  INTRODUCTION

Plaintiff Abduljabbar Khan commenced this action *pro se* on July 17, 2025, against his employer the New York State Department of Health ("NYSDOH"), and other employees or supervisors Patrick Parsons ("Parsons"), Sherry Faye ("Faye"), and Kimberlee Musser ("Musser") (collectively, "Defendants"). *See* Dkt. No. 1.  Plaintiff filed an amended complaint on November 21, 2025.  *See* Dkt. No. 21.  Plaintiff alleges employment discrimination, retaliation, and hostile work environment claims under Title VII of the Civil Rights Act of 1964 ("Title VII").  *See id*.

Presently before the Court is Defendants' motion to dismiss the amended complaint. *See* Dkt. No. 31. Plaintiff responded in opposition. *See* Dkt. No. 35. Defendants replied. *See* Dkt. No. 36. For the following reasons, the motion to dismiss is granted.

## II. BACKGROUND

The following facts are derived from Plaintiff's amended complaint. *See* Dkt. No. 21. Throughout his amended complaint, Plaintiff utilizes acronyms and references job titles and tasks without providing context. For example, Plaintiff alleges that he has established a specific type of facility that is within his field and that is "the best in the United States at NCL." Dkt. No. 21-1 at 2, ¶ 10. Plaintiff does not define "NCL." He does, however, state that Defendants work at the Wadsworth Center. *See* Dkt. No. 21 at 1, ¶¶ 3-5. Based on the Court's own research, it appears NCL may refer to a Nuclear Chemistry Laboratory.[1] Plaintiff does not explain what his doctoral degree is in, nor what the individual Defendants' degrees concern. He refers to himself as a Ph.D. and the individual Defendants as "Dr." Dkt. No. 21-1 at 1, ¶¶ 7-9; 7. He states that Defendant Faye is "assigned PD of NCL." *Id.* at 5, ¶ 41. Plaintiff does not define "PD." Defendant Faye supervised Plaintiff at NCL. *See id.* at 1, ¶ 8. Defendant Parsons "exercised authority over Plaintiff's evaluations, promotions, duties, job assignments, and work environment." *Id.* at ¶ 7. Defendant Musser "chaired the Promotion Review Board . . . and played a central role in decisions affecting Plaintiff's advancement." *Id.* at ¶ 9.

Plaintiff has been employed by the NYSDOH for approximately twenty-five years and "is a Research Scientist 3." Dkt. No. 21-1 at 1, ¶ 5. Defendants Parsons, Faye, and Musser are

---

[1] *See Single Source Procurement: Germanium SAGe Well Detector*, New York State Department of Health, https://www.health.ny.gov/funding/single_source/germanium.htm (last visited July 23, 2026) (discussing "[g]amma-ray spectrometry [that] is performed by the Nuclear Chemistry Laboratory (NCL) Program at Wadsworth Center").

employed by the NYSDOH in various supervisory capacities. *See id.* at ¶¶ 7-9. On May 18, 2022, the Promotion Review Board denied Plaintiff a promotion to "Research Scientist 4." *Id.* at 2, ¶ 14. On September 25, 2023, Plaintiff submitted another promotion package that was diverted to the NYSDOH Director's Office rather than forwarded to the Promotion Review Board, which "violated procedure." *Id.* at 3, ¶ 20. "The package sat unreviewed for six months" before Plaintiff received an "informal email" stating that the promotion was denied. *Id.* at ¶¶ 21-22. Additionally, "[d]espite being the senior Ph.D. scientist in NCL, Plaintiff was never assigned technical staff." *Id.* at ¶ 24. Plaintiff alleges that other scientists "with less seniority or a lower grade" received staff immediately. *See id.* at ¶ 25.

In March of 2024, Plaintiff filed discrimination complaints with the "NYSDHR" and "ADID (GOER)." *Id.* at ¶ 27. Plaintiff does not spell out these acronyms, but the Court understands these administrative bodies to be the New York State Division of Human Rights and the Anti-Discrimination Investigations Division of the New York State Office of Employee Relations.[2] On unspecified dates, Plaintiff received "false misconduct allegations" from Defendant Faye. *Id.* at ¶ 30. Plaintiff was accused of (1) moving detectors without approval; (2) deleting data from a server; (3) conducting unauthorized measurements; (4) creating "200 tag

---

[2] Defendants attached a copy of the NYSDHR, decision which denied Plaintiff's claim, to their motion to dismiss. *See* Dkt. No. 31-2. The decision dismissed Plaintiff's claim on March 26, 2025. *See id.* The NYSDRH noted that Plaintiff field his complaint on May 8, 2024, alleging retaliation and discrimination "based on his race/color "(Asian), national origin (Indian), and creed/religion (Islam)." *Id.* at 2. "'In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint' as well as documents 'integral to the complaint.'" *Mcgillvary v. Rolling Stone, LLC*, No. 25-1599, 2026 WL 946337, *1 (2d Cir. Apr. 8, 2026) (quoting *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010)). Plaintiff referenced his NYSDHR claim in his complaint. *See* Dkt. No. 2 at 3. However, the Court need not consider the decision of the NYSDHR because it does not impact the outcome of the pending motion to dismiss.

numbers" with no evidence; and (4) spending an additional $3,600 to buy "radioactive standards." *Id.* On April 8, 2024, "[a]dditional false accusations were issued." *Id.* at ¶ 31.

On October 1, 2024, Plaintiff received a performance review for the first time "in 25 years without being informed of the purpose in advance." *Id.* at ¶ 29. "On October 28, 2024, Plaintiff was reassigned to out-of-title accessioning tasks typically performed by non-Ph.D. staff." *Id.* at ¶ 33 (emphasis omitted). "On January 24, 2025, Plaintiff received his first-ever 'unsatisfactory' evaluation." *Id.* at ¶ 34 (emphasis omitted). "On February 25, 2025, Plaintiff was removed from his long-standing role as Reviewer 1 for gamma spectrometry results." *Id.* at ¶ 32 (emphasis omitted). On April 30, 2025, Plaintiff was removed by security from his workstation "without explanation." *Id.* at ¶ 34. Plaintiff alleges that his work access badge was revoked, he suffered humiliation and reputational harm, and he was only allowed to retrieve his personal items under security supervision. *See id.* at ¶¶ 3-37. Plaintiff also alleges that "Defendants refused to approve Plaintiff's manuscripts, blocking publication and professional progress" and he "was denied permission to complete major assigned projects." *Id.* at 5, ¶¶ 38-39.

Plaintiff contends that non-party "minority scientists . . . experienced blocked promotions, reassignments, or marginalization" and "white employees were consistently given preferential treatment." *Id.* at ¶ 40. Plaintiff provides the following facts to "illustrate a longstanding pattern of discrimination against minority scientists[:]"

- Nicole Cairns: promoted from grade 22 to 25, 25 to 27, and 27 to 31 without external grants and a Ph.D.

- Tom Semkow: promoted from Grade 31 to 35 without external grants.

- Chris Judd: promoted from Grade 25 to 27 without external grants.

- John Orsini (B.S.): promoted to Program Director over senior Ph/D/ scientists.

- Dr. Lingyun Li resigned, citing harassment by Dr. Parsons.

- Dr. Sherry Faye (Gr 27) assigned PD of NCL, replacing Dr. Chu (Gr 31).

*Id.* at ¶¶ 41-42.  Plaintiff does not identify any of these individuals' protected characteristics.

Plaintiff alleges that he was discriminated against based on his "race, color, and religion."

*Id.* at 5.  Plaintiff does not identify his race, national origin, or religion.  He alleges that he was

retaliated against in response to the complaints he filed with the New York State Office of

Employee Relations and New York State Division of Human Rights.

### III. DISCUSSION

**A.      Standard of Review**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief.  *See Patane v.*

*Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted).  In considering the legal

sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all

reasonable inferences in the pleader's favor.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493

F.3d 87, 98 (2d Cir. 2007) (citation omitted).  This presumption of truth, however, does not

extend to legal conclusions.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

Although a court's review of a motion to dismiss is generally limited to the facts presented in the

pleading, the court may consider documents that are "integral" to that pleading, even if they are

neither physically attached to, nor incorporated by reference into, the pleading.  *Mangiafico v.*

*Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d

147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," FED. R. CIV. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted).  Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face." *Id.* at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).  Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed." *Id.* at 570.

Courts must afford *pro se* plaintiffs "special solicitude" before granting motions to dismiss or motions for summary judgment. *See Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994).  "A document filed *pro se* is 'to be liberally construed,' . . . and 'a *pro se* complaint, however inartfully ple[]d, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "This policy of liberally construing *pro se* submissions is driven by the understanding that implicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475

(2d Cir. 2006) (internal quotations and modifications omitted). Therefore, courts read *pro se* filings "to raise the strongest arguments that they suggest." *Id.* at 474.

## B.    Incorporation by Reference

In his amended complaint, Plaintiff "incorporates by reference all prior factual allegations in the original complaint" and "reasserts all existing claims . . . against all defendants and asserts those claims Dr. Musser[.]" Dkt. No. 21 at 1, ¶ 7; 2, ¶ 11. Defendants argue that "the portion of the amended complaint that incorporates by reference the original complaint must be dismissed." Dkt. No. 31-3 at 4. Plaintiff argues in response that "[c]ourts in the Second Circuit consistently reject dismissal based on such hyper technical grounds, particularly where a pro se plaintiff's claims are readily understandable." Dkt. No. 35 at 2.

An amended complaint is intended to replace and supersede in its entirety any previous complaint. *See Dluhos v. Floating & Abandoned Vessel*, 162 F.3d 63, 68 (2d Cir. 1998) (citation omitted). Once accepted for filing, the amended complaint becomes the operative pleading, and the original complaint is no longer considered. *See id.* This requirement is buttressed by the Court's Local Rules, which provide, in pertinent part, that amended pleadings must be complete pleadings which will supersede the original pleading in all respects. *See* N.D.N.Y. L.R. 7.1(a)(4). The Local Rules further state that a "party shall not incorporate any portion of its prior pleading into the proposed amended pleading by reference." *Id.* "[T]his requirement eliminates the confusing nature of 'piecemeal' amended complaints." *Chapdelaine v. Keller*, No. 95-CV-1126, 1999 WL 34998130, *1 (N.D.N.Y. Sept. 28, 1999).

It is well established in the Second Circuit that an amended complaint is intended to entirely supersede an original complaint. *Neurological Surgery Prac. of Long Island, PLLC v. United States Dep't of Health & Hum. Servs.*, 145 F.4th 212, 225 (2d Cir. 2025) (citing *Dluhos v.*

7

*Floating & Abandoned Vessel*, 162 F.3d 63, 68 (2d Cir. 1998)). On November 10, 2025, the Court granted Plaintiff's request to file his first amended complaint and explained "that the amended pleading must be a complete pleading, which will supersede the pleading sought to be amended in all respects. A party shall not incorporate any portion of its prior pleading or exhibits thereto into the proposed amended pleading by reference." Dkt. No. 20.

Accordingly, Defendants are correct that the portions of the amended complaint that incorporate by reference the original complaint are improper. *See* Dkt. No. 31-3 at 4. However, the only substantive difference between the first filed pleading and the amended pleading is the addition of Dr. Musser as a Defendant, and, as discussed below, the claims against him fail as a matter of law. The Court declines to dismiss Plaintiff's amended complaint solely on this ground.

## C. Unspecified claims

In his amended complaint, "Plaintiff reasserts all existing claims (e.g., discrimination and retaliation under federal and state law)." Dkt. No. 21 at 2. Defendants argue that this portion of the amended complaint should be dismissed because it "purports to allege claims against Defendants under unspecified provisions of federal and state law [] without identifying any facts that form the basis of these alleged claims." Dkt. No. 31-3 at 7. Plaintiff responds that the amended complaint "clearly places Defendants on notice that Plaintiff asserts Title VII discrimination and retaliation claims." Dkt. No. 35 at 2. To the extent Plaintiff intends to assert claims beyond those expressly identified in the amended complaint, he has failed to provide fair notice of the requisite legal basis for those claims. *See Sheehy v. Brown*, 335 Fed. Appx. 102, 104 (2d Cir. 2009) (summary order) (affirming the district court's dismissal of claims that were "so vague as to fail to give the defendants adequate notice of the claims against them"); s*ee also Hanyon v. Express Auto Credit Corp.*, No. 3:23-CV-1640, 2024 WL 4783943, *2 (N.D.N.Y. Nov.

14, 2024).  However, the Court agrees with Plaintiff that his amended complaint appears to concern only Title VII claims, which will be the focus of the Court's analysis.

**D.      Claims against Individual Defendants**

Defendants next argue that Plaintiff's Title VII claims against the individual Defendants must be dismissed because individuals are not subject to liability under Title VII and any official-capacity claims are redundant of the claims against the NYSDOH.  *See* Dkt. No. 31-3 at 8-10.  In response "Plaintiff acknowledges that Title VII does not impose individual liability."  Dkt. No. 35 at 2.  Plaintiff states that "[t]he proper employer-defendant, NYSDOH, remains before the Court." *Id.*

It is well established "'[i]ndividuals are not subject to liability under Title VII.'"  *Buon v. Spindler*, 65 F.4th 64, 78 (2d Cir. 2023) (quoting *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000)); *see also Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 221 (2d Cir. 2004). Likewise, "'[w]ithin the Second Circuit, where a plaintiff names both the municipal entity and an official in his or her official capacity, district courts have consistently dismissed the official capacity claims as redundant.'"  *Santana v. City of Ithaca, N.Y.*, No. 5:12-CV-625, 2013 WL 1855829, *5 (N.D.N.Y. May 1, 2013) (quoting *Philips v. Cnty. of Orange*, 894 F.Supp.2d 345, 384 n.35 (S.D.N.Y. 2012)).  Plaintiff does not dispute these rules of law.  Accordingly, Plaintiff's Title VII claims against the individual Defendants Parsons, Faye, and Musser are dismissed.

**E.      Merits of the Claims**

*1. Discrimination*

*a. Timeliness of Claims*

Defendants argue that Plaintiff's Title VII discrimination claim must be dismissed to the extent that it is based on untimely acts of alleged discrimination.  *See* Dkt No. 31-3 at 11.

9

Plaintiff alleges that he filed a complaint with the NYSDOH "[i]n March 2024[.]"  Dkt. No. 21-2 at 3, ¶ 27.  According to Defendants, any claims based on conduct alleged to have occurred 300 days before the NYSDOH complaint are time-barred.  *See* Dkt. No. 31-3 at 11-12.  Plaintiff has not responded to this argument.  *See generally* Dkt. No. 35.

"'Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on' a Rule 12(b)(6) motion to dismiss 'if the defense appears on the face of the complaint.'"  *Cruz v. City of New York*, No. 21-CV-1999, 2021 WL 5605139, *4 (S.D.N.Y. Nov. 30, 2021) (quoting *Connecticut Gen. Life Ins. Co. v. BioHealth Lab'ys, Inc.*, 988 F.3d 127, 131-32 (2d Cir. 2021)).  Under Title VII, a claimant must "file a charge of discrimination with the [Equal Employment Opportunity Commission ("EEOC")] within 180 days of the alleged unlawful employment action or, if the claimant has already filed the charge with a state or local equal employment agency, within 300 days of the alleged discriminatory action."  *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996); *see also* 42 U.S.C. § 2000e–5(e).  "'In states such as New York that have an agency with the authority to address charges of discriminatory employment practices, the statute of limitations for filing a charge of discrimination . . . is 300 days.'"  *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 126 (2d Cir. 2010) (citation omitted); *see also Harris v. City of New York*, 186 F.3d 243, 248 (2d Cir. 1999).

Plaintiff's discrimination claim concerns a "denial of promotion" dated May 18, 2022, and the "mishandling of the 2023 promotion package" which Plaintiff submitted on September 25, 2023.  Dkt. No. 21-1 at 2-3.  Plaintiff filed his NYSDOH complaint, "[i]n March 2024[.]"  Dkt. No. 21-2 at 3, ¶ 27. In their motion to dismiss, "Defendants take the dates as ple[]d in the Amended Complaint as true."  Dkt. No. 31-3 at 12 n.3.  However, they "note that the date Plaintiff

filed his administrative charge was May 8, 2024." *Id.*; *see also* Dkt. No. 31-2 at 2 (Determination and Order of NYSDHR).

As Plaintiff is *pro se*, the Court will assume for the sake of argument that Plaintiff filed the administrative complaints on March 1, 2024. Therefore, according to the 300-day requirement, any discrimination claims arising from conduct alleged to have occurred before May 6, 2023, must be dismissed because he did not timely file his NYSDHR complaint. Specifically, any claims arising from the denial of promotion on May 18, 2022, are time-barred and dismissed. It is possible that additional claims are time-barred; however, Plaintiff does not provide dates for all of the alleged discriminatory conduct. Therefore, the Court will address the merits of those claims which are not clearly barred based on the dates included in the amended complaint.

### b. Prima Facie Claim

Plaintiff's Title VII discrimination claim is based on the following factual allegations: (1) the promotion package he submitted on September 25, 2023, was denied; (2) he did not receive staff; (3) he received a performance review without proper notice; (3) he was subject to false misconduct allegations; (4) he was reassigned to different duties; (4) he received an "unsatisfactory" performance evaluation; (5) he was removed from his workstation by security on one occasion; (5) Defendants hindered his research publication and career progress; and (6) "[w]hite employees were consistently given preferential treatment." Dkt. No. 21-2 at 3-5.

Defendants argue that Plaintiff's Title VII discrimination claim must be dismissed because Plaintiff has failed to allege that he suffered an adverse employment action or discriminatory intent. *See* Dkt. No. 31-3 at 13-17.

Plaintiff does not respond to Defendants' arguments regarding his discrimination claim. *See generally* Dkt. No. 35. Plaintiff states that "[w]hen the Amended Complaint is read as a

whole and construed liberally as required for pro se pleadings, it plausibly alleges that Plaintiff was subjected to retaliation and materially adverse employment actions after engaging in protected activity . . . ." *Id.* at 1. Plaintiff then expressly addresses Defendants' argument that he has failed to plausibly allege a retaliation claim. *See id.* at 3. He says nothing about his discrimination claim.

On this ground alone, the Court could grant the motion to dismiss Plaintiff's discrimination claim as abandoned. *See Ngambo v. Soc. Sec. Admin.*, No. 23-CV-963, 2024 WL 4203262, *5 (S.D.N.Y. Sept. 16, 2024), *aff'd*, No. 24-2715, 2025 WL 1355019 (2d Cir. May 9, 2025); *Lewis v. Graham*, No. 9:18-CV-451, 2020 WL 3038276, *11 (N.D.N.Y. Feb. 3, 2020), *R. & R. adopted*, 2020 WL 1283532 (N.D.N.Y. Mar. 18, 2020). However, because Plaintiff is p*ro se*, the Court will address the merits of the claim.

To adequately plead a Title VII discrimination claim, a plaintiff must "'demonstrat[e] that (1) he was within the protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination.'" *Farooq v. City of New York*, No. 20-3185, 2022 WL 793117, *2 (2d Cir. Mar. 16, 2022) (quoting *Menaker v. Hofstra Univ.*, 935 F.3d 20, 30 (2d Cir. 2019)). "'The facts required . . . to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination. They need only give plausible support to a minimal inference of discriminatory motivation.'" *Id.* (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)).

An employee sustains an "adverse employment action" if he "endures a materially adverse change in the terms and conditions of employment . . . . An adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities."

12

*Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (citation and quotation marks omitted).  Examples of materially adverse actions include "'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.'"  *Id.* (quoting *Crady v. Liberty Nat'l Bank & Trust Co. of Ind.,* 993 F.2d 132, 136 (7th Cir. 1993)).

Here, the Court finds that Plaintiff has failed to allege any adverse employment action under Title VII.  Plaintiff has not alleged that any of the terms or conditions of his employment, such as wages, hours, job title, or benefits, were materially changed.  Plaintiff alleges that he was removed from his role as "Reviewer 1" but does not contend he was ever demoted from his "Research Scientist 3" position.  Dkt. No. 21-1 at 1, ¶ 5; 4, ¶ 32.  He does not state that the "Reviewer 1" changed his hours or salary.  To the extent Plaintiff alleges that he was escorted out of work on one occasion, he does not state that he was terminated or demoted but merely removed from the building for an unspecified reason and an unspecified date.  Plaintiff's allegations, without more, do not constitute an adverse employment action.  *See Sotomayor v. City of New York*, 862 F. Supp. 2d 226 (E.D.N.Y. 2012), *aff'd*, 713 F.3d 163, 254-57 (2d Cir. 2013) (concluding that reprimanding the plaintiff and giving the plaintiff less desirable work assignments and duties were not adverse actions in the absence of other negative consequences such as demotion in title or diminution in pay); *Groom v. New York State Dep't of Corr. & Cmty. Supervision*, No. 1:22-CV-1080, 2025 WL 2772054, *6-7 (N.D.N.Y. Sept. 29, 2025) ("acknowledg[ing] the indignation and sense of disrespect plaintiff experienced when her supervisors and colleagues appeared not to believe her.  She has presented evidence that her supervisors failed to treat the incident with appropriate seriousness, and that their apparent

13

indifference—verging on callousness—eroded her sense of safety and support in the workplace"

but concluding that the allegations did not rise to adverse employment actions because the

plaintiff presented "no legally cognizable change in her circumstances, only her subjective

dissatisfaction with how defendants reacted").

The Court finds that Plaintiff has also failed to allege "'at least minimal support for the

proposition that the employer was motivated by discriminatory intent' based on Plaintiff's race,

color, sex, or religion, as required by Title VII." *Mitchell v. Planned Parenthood of Greater N.Y.,*

*Inc.*, 745 F. Supp. 3d 68, 92 (S.D.N.Y. 2024) (citing *Buon v. Spindler*, 65 F.4th 64, 79 (2d Cir.

2023)).  Plaintiff presents conclusory allegations that "minority scientists experienced blocked

promotions, reassignments, or marginalization" and "white employees were consistently given

preferential treatment."  Dkt. No. 21-1 at 5, ¶¶ 40-41.  It is well settled that "'[n]aked assertions of

discrimination[,] without any specific allegation of a causal link between the defendants' conduct

and the plaintiff's membership in a protected class, are too conclusory to withstand a motion to

dismiss.'"  *Mitchell*, 745 F. Supp. 3d at 92 (quoting *Williams v. Westchester Med. Ctr. Health*

*Network*, No. 21-CV-03746, 2024 WL 990153, *9 (S.D.N.Y. Mar. 7, 2024)).  In other words,

"while a discrimination complaint need not allege facts establishing each element of a prima facie

case of discrimination to survive a motion to dismiss, . . . it must at a minimum assert

nonconclusory factual matter sufficient to 'nudge[ ] [its] claims' . . . 'across the line from

conceivable to plausible' to proceed[.]"  *E.E.O.C. v. Port Auth. of New York & New Jersey*, 768

F.3d 247, 254 (2d Cir. 2014) (internal citation and additional quotation marks omitted); *see also*

*Reppert v. New York State Dep't of State*, No. 1:19-CV-1518, 2021 WL 3165210, *8 (N.D.N.Y.

July 26, 2021) (dismissing the plaintiff's race discrimination claim because although the

14

"[p]laintiff identifies a number of individuals who were promoted, while he was left behind[,] . . . [he] makes no allegations that these individuals were outside Plaintiff's protected class").

Plaintiff does not identify the protected classes of the individuals he has named as Defendants or comparators. Because Plaintiff (1) does not oppose the motion to dismiss his discrimination claim; (2) fails to allege adverse employment actions; and (3) fails to allege that any such adverse employment actions were the result of discriminatory intent, he has failed to state a discrimination claim. Accordingly, the Court grants Defendants' motion to dismiss in relation to Plaintiff's Title VII discrimination claim.

### 2. Hostile Work Environment Claim

Defendants argue that Plaintiff has failed to allege a hostile work environment claim because (1) he has not alleged severe and pervasive harassment; and (2) he has not provided a sufficient basis for imputing any conduct on NYSDOH. *See* Dkt. No. 31-3 at 20-23. Plaintiff does not respond to Defendants' motion about this claim; therefore, the Court would again be justified in granting the motion solely because Plaintiff has abandoned the claim. *See* Dkt. No. 35. The Court will, however, consider the merits in light of Plaintiff's *pro se* status.

To make out a *prima facie* case of hostile work environment under Title VII, a plaintiff must allege conduct that "'(1) is objectively severe or pervasive, that is, . . . the conduct creates an environment that a reasonable person would find hostile or abusive'; (2) creates an environment 'that the plaintiff subjectively perceives as hostile or abusive'; and (3) 'creates such an environment because of'" a characteristic protected by Title VII. *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (quoting *Gregory v. Daly*, 243 F.3d 687, 691-92 (2d Cir. 2001)); *see also Banks v. Gen. Motors, LLC*, 81 F.4th 242, 262 (2d Cir. 2023).

15

"In order to establish a hostile work environment claim under Title VII, a plaintiff must . . . show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 102 (2d Cir. 2010) (quoting *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006)). "A plaintiff must show not only that [he] subjectively perceived the environment to be abusive, but also that the environment was objectively hostile and abusive." *Id.* In assessing the hostility of a work environment, courts examine the "totality of the circumstances." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 745 (2d Cir. 2003). In particular, courts "consider[ ]a variety of factors including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Gorzynski*, 596 F.3d at 102 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

"A plaintiff need not show that [his] hostile working environment was both severe and pervasive; only that it was sufficiently severe or sufficiently pervasive, or a sufficient combination of these elements, to have altered [his] working conditions." *Pucino v. Verizon Wireless Commc'ns*, 618 F.3d 112, 119 (2d Cir. 2010). In order to be considered pervasive, a plaintiff must show "that the incidents were 'sufficiently continuous and concerted.'" *Brennan v. Metro. Opera Assoc.*, 192 F.3d 310, 318 (2d Cir. 1999) (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)); *see also Robinson v. Purcell Const. Corp.*, 859 F. Supp. 2d 245, 255 (N.D.N.Y. 2012) (finding five "crude and offensive" gender-based comments were "neither pervasive nor severe"). The "ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing" are not objectively severe enough

16

to establish a hostile work environment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998). "A plaintiff must show that 'either a single incident was extraordinarily severe, or that a series of incidents were "sufficiently continuous and concerted" to have altered the conditions of her working environment.'" *Banks*, 81 F.4th at 262 (quoting *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002)). "The hostility of the work environment 'as a whole, not the motivation of one decisionmaker,' is the central inquiry in a hostile work environment claim, and 'liability is determined only by looking at all the circumstances.'" *Id.* (citation omitted).

The only facts that Plaintiff provides in support of his hostile work environment claim are allegations that "Defendants subjected [him] to severe and pervasive harassment, including intimidation, humiliation, false accusations, blocking work, and stripping responsibility" and "Defendants' conduct altered the terms and conditions of Plaintiff's employment and created a hostile working environment." Dkt. No. 21-1 at 6. These conclusory assertions are insufficient to establish conduct rising to the level of severe and pervasive harassment. *See Miller v. City of Ithaca*, No. 3:10-CV-597, 2010 WL 3809842, *7 (N.D.N.Y. Sept. 22, 2010) (concluding that allegations "that [the d]efendants 'repeatedly treat African–American and minority officers more favorably than White male officers in matters of discipline and evaluating performance'" and "that male Caucasian officers are more closely scrutinized" were "conclusory" and "[did] not specify sufficient facts upon which they [were] based to render the conclusion plausible"); *Rys v. Grimm*, No. 6:19-CV-1251, 2021 WL 827671, *3 (N.D.N.Y. Mar. 4, 2021) (determining that the plaintiff failed to sufficiently allege conduct rising to the level of severe and pervasive where the plaintiff alleged "that the District Defendants subjected her to a hostile work environment by 'intimating and insinuating' that she was romantically or sexually interested in her 'openly gay' student . . .; 'actively undermin[ing]' her in her teaching and coaching positions; making 'slanderous

17

statements' about her that she committed unlawful conduct for which she should be in jail; and subjecting her to 'excessive scrutiny' in both her teaching and coaching positions").

This claim is also subject to dismissal because of Plaintiff's failure to allege conduct that can be imputed on his employer, NYSDOH.  "For hostile work environment claims, 'the plaintiff must demonstrate a specific basis for imputing the conduct creating the hostile work environment to the employer.'" *Chislett v. New York City Dep't of Educ.*, 157 F.4th 172, 187 (2d Cir. 2025) (quoting *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004)).  "When the alleged harasser is in a supervisory position over the plaintiff, the objectionable conduct is automatically imputed to the employer." *Id.* (citation and quotation marks omitted).  "In contrast, when a plaintiff's coworkers or non-employees perpetuate the harassment, the employer will ordinarily not be liable unless the plaintiff demonstrates that 'the employer either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it.'" *Id.* (quoting *Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 63 (2d Cir. 1992)).

Plaintiff summarily alleges that "Defendants subjected Plaintiff to severe and pervasive harassment, including intimidation, humiliation, false accusations, blocking work, and stripping responsibilities." Dkt. No. 21-1 at 6.  He does not attribute each alleged hostile act to a specific Defendant.  Plaintiff does allege that Defendant Faye supervised him, and Defendant Parsons "exercised authority over Plaintiff's" work assignments *Id.* at 1.  However, even if conduct could be imputed to the NYDSDOH, Plaintiff has failed to allege that the conduct was severe and pervasive or that it was occurring because of his race, religion, or national origin.  "Although hostility of a work environment is assessed considering the 'totality of the circumstances,' . . . '[i]t is . . . important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination.'" *White v.*

18

*Roosevelt Union Free Sch. Dist. Bd. of Educ.*, No. 15-CV-1035, 2025 WL 552744, *15 (E.D.N.Y. Feb. 19, 2025) (quoting *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007)). "In other words, to succeed on his hostile work environment claim, Plaintiff must 'demonstrate that [ ]he was subjected to the hostility because of h[is] membership in a protected class.'" *Id.* (quoting *Brennan v. Metro. Opera Ass'n Inc.*, 192 F.3d 310, 318 (2d Cir. 1999)). Plaintiff has not presented any allegations that any purported "harassment" occurred because of his membership in a protected class. Dkt. No. 21-1 at 6; *see Boyar v. Yellen*, No. 21-507, 2022 WL 120356, *3 (2d Cir. Jan. 13, 2022) (summary order) (affirming dismissal of the complaint because the plaintiff "did not allege any facts at all that would support the inference that the behavior he complains of was because of his age, sex, religion, or national origin"). Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's Title VII hostile work environment claim.

### 3. Retaliation Claim

Plaintiff alleges that Defendants retaliated against him in violation of Title VII after he engaged in protected activity by filing complaints with the NYSDHR and New York State Office of Employee Relations. *See* Dkt. No 21-1 at 6. After this alleged protected activity occurred, Plaintiff contends Defendants retaliated against him by: (1) making false allegations; (2) "[i]ssuing harmful disciplinary actions;" (3) removing him from unspecified duties (4) reassigning him to out-of-title work; (5) removing him from his workstation; and (6) blocking research publications and projects. *See id.* Defendants argue that Plaintiff's retaliation claim should be dismissed because Plaintiff fails to allege (1) that he suffered any adverse employment action and (2) that there is any causal connection between such action and Plaintiff's protected conduct. *See* Dkt. No. 31-3 at 15. In response, Plaintiff argues the "allegations plausibly describe materially

19

adverse actions under Title VII" and that causation is demonstrated by "temporal proximity combined with an escalating pattern of adverse actions."  Dkt. No. 35 at 3-4.

Title VII prohibits employers from discriminating against an employee who "has opposed any practice made an unlawful employment practice" or "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing[.]"  42 U.S.C. § 2000e–3(a).  To make out a *prima facie* case of retaliation under Title VII, a plaintiff must allege as follows:

> (1) she engaged in protected activity, (2) the defendant was aware of that activity, (3) she was subjected to a retaliatory action, or a series of retaliatory actions, that were materially adverse, and (4) there was a causal connection between the protected activity and the materially adverse action or actions.

*Carr v. New York City Transit Auth.*, 76 F.4th 172, 180 (2d Cir. 2023); see *also Harder v. New York*, 117 F. Supp. 3d 157, 166 (N.D.N.Y. 2015).

Defendants do not argue that Plaintiff failed to allege the first two elements.  *See* Dkt. No. 31-3 at 18-20.  Therefore, the Court confines its analysis to the remaining two elements: adverse action and causation.

### a. Adverse Action

As the Second Circuit has explained, the Supreme Court recognizes that "Title VII's anti-discrimination and anti-retaliation provisions 'are not coterminous'; anti-retaliation protection is broader and 'extends beyond workplace-related or employment-related retaliatory acts and harm.'" *Hicks v. Baines,* 593 F.3d 159, 165 (2d Cir. 2010) (quoting *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 67 (2006)).  In a Title VII retaliation claim, an adverse employment action is one that is "materially adverse to a reasonable employee or job applicant."  *Id.* (quoting *White,* 548 U.S. at 57) (internal quotation marks omitted).  "Actions are 'materially adverse' if they are

'harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Id.* (quoting *White,* 548 U.S. at 57). Title VII "does not set forth a general civility code for the American workplace." *Id.* (citations omitted). "'[P]etty slights or minor annoyances that often take place at work and that all employees experience' do not constitute actionable retaliation." *Id.* (citation omitted). "[I]n determining whether conduct amounts to an adverse employment action, the alleged acts of retaliation need to be considered both separately and in the aggregate, as even minor acts of retaliation can be sufficiently 'substantial in gross' as to be actionable." *Id.* (quoting *Zelnik v. Fashion Inst. of Tech.,* 464 F.3d 217, 227 (2d Cir. 2006)).

"'[T]ermination constitutes an adverse employment action' under Title VII." *Edelman v. NYU Langone Health Sys.*, 141 F.4th 28, 45 (2d Cir. 2025) (quoting *Kelleher v. Fred A. Cook, Inc.*, 939 F.3d 465, 468 (2d Cir. 2019). Additionally, "'[a] plaintiff may prevail on a claim for retaliation even when the underlying conduct complained of was not in fact unlawful 'so long as []he can establish that []he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated [the] law.'" *Krul v. DeJoy*, 705 F. Supp. 3d 5, 61 (N.D.N.Y. 2023) (quoting *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002)).

### 1. False allegations and disciplinary actions

Without providing any specific dates, Plaintiff alleges that retaliatory false misconduct allegations were made against him when Defendant Faye accused him of (1) moving detectors without approval (2) deleting data from a server (3) conducting unauthorized measurements (4) creating "200 tag numbers" with no evidence and (4) spending an additional $3,600 to buy equipment. Dkt. No. 21-1 at 4, ¶ 30. Plaintiff contends "additional false accusations were issued on April 8, 2024." *Id.* He also states that Defendants "[i]ssu[ed] harmful disciplinary actions."

*Id.* at 6, ¶ 47.  Plaintiff does not explain what form the accusations took, as in whether they were written or spoken.  He also does not explain what the "disciplinary actions" were or if they were utilized in his performance review.

The Second Circuit has recognized that "the terms and conditions of employment ordinarily include the possibility that an employee will be subject to an employer's disciplinary policies in appropriate circumstances." *Joseph v. Leavitt,* 465 F.3d 87, 91 (2d Cir. 2006).  Accordingly, "an employee does not suffer a materially adverse change in the terms and conditions of employment where the employer merely enforces its preexisting disciplinary policies in a reasonable manner." *Id.*  The Second Circuit has further explained that "oral and written warnings do not amount to materially adverse conduct . . . [because] '[t]he application of the [employer's] disciplinary policies to [the employee], without more, does not constitute adverse employment action.'" *Chang v. Safe Horizons,* 254 Fed. Appx. 838, 839 (2d Cir. 2007) (summary order) (quoting *Joseph,* 465 F.3d at 91).

Here, Plaintiff has not provided any facts indicating that the "false allegations" were inconsistent with Defendants' routine disciplinary policies nor that any formal misconduct proceedings were brought against him.  He does not explain how or why the statements were "false."  Plaintiff states that "harmful disciplinary actions" were taken against him but does not explain any specific disciplinary action or resulting adverse consequences.  Dkt. No. 21-1 at 6.  Accordingly, these allegations do not sufficiently arise to adverse actions.  *See Lyman v. NYS OASAS,* 928 F. Supp. 2d 509, 523 (N.D.N.Y. 2013) (dismissing a retaliation claim in part because the plaintiff "claims that a 'memorandum' was placed in his file, but fails to provides details about this memorandum or why it was allegedly issued").

22

### *2. Removal from duties and reassignment of work*

Plaintiff alleges that on February 25, 2025, he "was removed from his long-standing role as Reviewer 1 for gamma spectrometry results" and on October 28, 2024, he "was reassigned to out-of-title accessioning tasks, typically performed by non-Ph.D. staff." Dkt. No 21-1 at 4. "[M]erely changing someone's job duties does not automatically qualify as an 'adverse employment action.'" *Morrison v. Potter*, 363 F. Supp. 2d 586, 590 (S.D.N.Y. 2005). Further, "subjective feelings about a change in job duties do not transform a reassignment into an adverse employment action. *Id.* at 591 (citing *Reyes v. New York State Off. of Child. & Fam. Servs.*, No. 00-CV-7693, 2003 WL 21709407, *6 (S.D.N.Y. July 22, 2003), *aff'd*, 109 Fed. Appx. 466 (2d Cir. 2004) (summary order)). "However a change in duties or job reassignment may be an adverse employment action, if it results in a change in responsibilities so significant as to constitute a setback to the plaintiff's career." *Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 213 (E.D.N.Y. 2014) (quoting *Edwards v. Huntington Union Free Sch. Dist.*, 957 F. Supp. 2d 203, 211 (E.D.N.Y. 2013)) (quotation marks omitted); *see also Krinsky v. Abrams*, No. 01-CV-5052, 2007 WL 1541369, at *11 (E.D.N.Y. May 25, 2007), *aff'd*, 305 Fed. Appx. 784 (2d Cir. 2009) (summary order) ("[A] negative evaluation, or the threat of a negative evaluation, while not an adverse employment action that affects terms and conditions of employment, might dissuade[ ] a reasonable worker from making or supporting a charge of discrimination") (citation and quotation marks omitted).

Here, Plaintiff does not attribute any change in his working conditions because of his reassignment to different duties or a change in his role or job-title. Although Plaintiff characterizes the reassigned duties as "out-of-title" tasks typically performed by non-Ph.D. staff, that characterization is entirely conclusory. Plaintiff does not allege facts demonstrating that the

23

reassigned tasks fell outside the scope of his position or that they were tasks someone of his level never performed.  Likewise, Plaintiff does not explain what the "Reviewer 1" position entails or how his removal from that role altered his employment conditions.  Dkt. No 21-1 at 4.  Without any such context, these alleged retaliatory actions do not rise to adverse employment actions.

The Court is mindful however, that "[d]ischarge, demotion, refusal to hire, refusal to promote, and reprimand [can constitute] adverse employment actions."  *Belch v. Jefferson Cnty.*, 108 F. Supp. 2d 143, 153-54 (N.D.N.Y. 2000) (citing *Kaluczky v. City of White Plains*, 57 F.3d 202, 208 (2d Cir. 1995)).  To the extent Plaintiff's job changes meet that threshold, the Court later explains that the retaliation claim still fails for a lack of causation.

### 3. Blocking research publications and projects

Plaintiff alleges "Defendants refused to approve [his] manuscripts, blocking publication and professional progress."  Dkt. No. 21-1 at 5.  Plaintiff asserts that he was denied permission to complete two "major assignment projects" and "additional research projects."  *Id.*  A defendant's conduct may constitute "an adverse employment action if it results in a change in responsibilities so significant as to constitute a setback to the plaintiff's career."  *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 641 (2d Cir. 2000), *abrogated on other grounds by Hicks*, 593 F.3d at 165; *see also Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 91 (2d Cir. 2015) (concluding that assigning a teacher an increase of "chronically absent students" could adversely affect the teacher by "making it more difficult from him to achieve good results").  However, Plaintiff provides no factual allegations explaining what his job duties are, how Defendants allegedly impeded his progress, how Defendants' actions deviated from the normal research and publication process, or how the inability to publish specific research stalled Plaintiff's career.  Plaintiff summarily asserts that Defendants' conduct "block[ed] . . . [his] professional progression."  Dkt.

24

No. 21-1 at 5, ¶ 38.  This assertion is entirely conclusory.  Without any such information, Plaintiff has failed to plausibly allege that Defendants took adverse action against him for purposes of a Title VII retaliation claim.

### *4. Physically removing Plaintiff from workstation*

Plaintiff alleges that on April 30, 2025, security removed him from his workstation without explanation.  *See* Dkt. No. 21-1 at 4.  Plaintiff alleges that on one occasion on an unspecified date, his access badge was revoked, he suffered humiliation and reputational harm, and he was only allowed to retrieve personal items under security supervision.  *See id.*  "[I]t is not enough that [a] plaintiff was embarrassed or anxious because . . . 'courts have repeatedly held that such behavior does not amount to an adverse employment action in a retaliation context.'" *Franco v. City of New York*, No. 19-CV-5905, 2025 WL 964014, *12 (E.D.N.Y. Mar. 31, 2025) (quoting *Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 461 (S.D.N.Y. 2023)); *see also Miksic v. TD Ameritrade Holding Corp.*, No. 12-CV-4446, 2013 WL 1803956, *3 (S.D.N.Y. Mar. 7, 2013) ("Actions that cause a plaintiff 'embarrassment or anxiety' are insufficient to qualify as an adverse action because 'such intangible consequences are not materially adverse alterations of employment conditions'") (citation omitted).  Plaintiff does not explain why he was escorted out of the building, when he was escorted out, when he was let back in, or if he was ultimately suspended or terminated from his job.  It is certainly plausible that the act of being escorted out of a workplace could cause anxiety, stress, and humiliation, but that in and of itself does not constitute an adverse employment action.  Because Plaintiff has failed to adequately plead any adverse actions, his retaliation claim must be dismissed.

### *b. Causal connection*

Even if Plaintiff has sufficiently alleged an adverse employment action, he has failed to

allege a causal connection between his protected activity and any one of the purported adverse actions. Plaintiff disagrees, arguing that "the close timing between Plaintiff's complaints and Defendants' actions demonstrates a retaliatory motive." Dkt. No 21-1 at 5.

A plaintiff may demonstrate the requisite causal connection "'either (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.'" *McNamara v. Cnty. of Saratoga*, 748 F. Supp. 3d 68, 95 (N.D.N.Y. 2024) (quoting *Natofsky v. City of New York*, 921 F.3d 337, 353 (2d Cir. 2019)). Where the temporal proximity by itself is accepted as "sufficient evidence of causality . . . [it] must be very close." *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). Courts have generally found that "a passage of two months between the protected activity and the adverse employment action seems to be the dividing line." *Ruhling v. Tribune Co.*, No. 04-CV-2430, 2007 WL 28283, *23 (E.D.N.Y. Jan. 3, 2007) (collecting cases); *see also Garrett v. Garden City Hotel, Inc.*, No. 05-CV-0962, 2007 WL 1174891, *21 (E.D.N.Y. Apr. 19, 2007) (noting that "district courts in this Circuit have consistently held that a passage of more than two months between the protected activity and the adverse employment action does not allow for an inference of causation"). The Second Circuit has recently stated that "caselaw teaches that a period of several weeks to several months may establish the required causal relationship." *Ziparo v. CSX Transportation, Inc.*, 160 F.4th 314, 336 (2d Cir. 2025). The Second Circuit has also instructed that "courts should also consider not only the 'passage of a significant amount of time,' but also whether 'some legitimate intervening event' severs the causal connection." *Id.* (citation omitted).

As Defendants note, Plaintiff's amended complaint is devoid of any "facts even suggesting

any causal connection between his administrative complaints and the allegedly adverse actions." Dkt. No. 31-3 at 19. Plaintiff only provided dates for some of the alleged conduct. For the dated acts, Plaintiff was (1) reassigned to different duties, called to a performance review, and heard false allegations about him approximately seven months after filing the NYSDOH complaint; (2) removed from a specific role eleven months after filing the complaint; and (3) escorted out of his workstation approximately thirteen months after he filed the complaint. *See* Dkt. No 21-1 at 4. These acts are too attenuated from his protected activity to establish a causal connection. *See Garrett,* 2007 WL 1174891, at *20-21 ("[T]here was approximately a two and one-half month interval between her most recent complaint of racial discrimination and her discharge. Under the circumstances of this case, such a time lapse, in the absence of other evidence of defendant's retaliatory motive, precludes a finding of a causal connection between the protected activity and the adverse employment action"); *Raymond v. City of New York*, 317 F. Supp. 3d 746, 769 (S.D.N.Y. 2018) ("The subsequent alleged incidents of retaliation occurred beginning in December 2014 . . ., over ten months after the filing of the complaints, a length of time which 'does not allow for an inference of causation'" (quoting *Johnson v. NYS Office of Alcoholism & Substance Abuse Servs.*, 16-CV-09769, 2018 WL 1353258, *5 (S.D.N.Y. March 13, 2018)),

Plaintiff fails to present any other allegations that demonstrate a retaliatory motive. Because he has failed to sufficiently allege causation, the Court grants Defendants' motion to dismiss Plaintiff's Title VII retaliation claim.

**D.      Leave to amend**

Plaintiff filed his original complaint on July 17, 2025. *See* Dkt. No. 1. Plaintiff filed an amended complaint on November 21, 2025. *See* Dkt. No. 21. Plaintiff argues that if the Court grants the motion to dismiss, he should be permitted leave to file a second amended complaint

because he is *pro se*.  *See* Dkt. No. 35 at 4.  In their reply, Defendants ask the Court to deny

Plaintiff's request for leave to amend.  *See* Dkt. No. 36 at 9-11.

Defendants correctly point out that this Court's Local Rules require a party moving to

amend a complaint to attach a copy of the proposed amended complaint to its filing.  *See* Dkt. No.

36 at 9; *see also* N.D.N.Y. L.R. 7.1(b)(4), 15.1.  Plaintiff did not do so and despite his *pro se*

status, he is still obligated to comply with the Court's rules as well as the Federal Rules of Civil

Procedure.  *See Carmona v. Wright*, 233 F.R.D. 270, 275 (N.D.N.Y. 2006) ("*Pro se* litigants must

comply with local rules, and the failure to do so is sanctionable").

Regardless, leave to file a second amended complaint is not warranted given the facts of

the case.  "'A *pro se* complaint should not be dismissed without the [c]ourt granting leave to

amend at least once when a liberal reading of the complaint gives any indication that a valid claim

might be stated.'"  *Heuser v. City of Glen Cove*, No. 25-541, 2026 WL 1783679, at *2 (2d Cir.

June 22, 2026) (summary order) (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)).

"However, 'a futile request to replead should be denied.'"  *Id.* (quoting *Cuoco v. Moritsugu*, 222

F.3d 99, 112 (2d Cir. 2000)).

Plaintiff has already amended his complaint, once.  Some of Plaintiff's claims are untimely

and others have been brought against improper parties.  In neither complaint did Plaintiff include

factual allegations about what his job actually entails and how it was impacted by Defendants'

conduct.  He did not allege his race, national origin, or religion and he does not allege any facts

which raise an inference that Defendants' conduct was the result of discriminatory or retaliatory

motive.  Plaintiffs' response to the motion to dismiss does not clarify any of this but instead

abandons two of his three claims.  Because Plaintiff did not submit a proposed second amended

complaint, the Court has been shown nothing which leads it to believe that Plaintiff can cure all of

28

the deficiencies set forth in this decision.  Based on the foregoing, the Court finds that leave to amend would be futile.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion to dismiss (Dkt. No. 31) is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's amended complaint (Dkt. No. 21) is **DISMISSED with prejudice and without leave to amend**; and the Court further

**ORDERS** that the clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:  July 27, 2026
        Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge